Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1765 | **DATE** | 7/30/2001 |
| **CASE TITLE** | Chicago District Council vs. Abel Angulo and Maria Rodriguez | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Angulo's motion to dismiss is denied, and he is ordered to answer the First Amended Complaint on or before August 10, 2001. (42-2) Angulo's motion to strike is granted in part and denied in part. (42-1)

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | 7/31/01 date docketed | |
| | Notified counsel by telephone. | | | 46 |
| | Docketing to mail notices. | | EB docketing deputy initials | |
| | Mail AO 450 form. | FILED FOR DOCKETING | | |
| | Copy to judge/magistrate judge. | | 7/30/2001 date mailed notice | |
| SN | courtroom deputy's initials | 01 JUL 30 PM 2:25 | SN mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHICAGO DISTRICT COUNCIL OF )
CARPENTERS PENSION FUND, et al., )
)
Plaintiffs, )
)
v. ) No. 00 C 1765
)
ABEL ANGULO and MARIA RODRIGUEZ, )
)
Defendants. )

MEMORANDUM OPINION AND ORDER

Almost all ERISA actions brought by employee benefit plans or their representatives to collect assertedly delinquent contributions by participating employers enjoy (if that is the right word) short and uncomplicated lives in the federal court system: Most often the end result is a default judgment (frequently because the employer is pretty much judgment-proof) or an agreed judgment entered into once the challenges to the plan's audit have been ironed out between the litigants. This case is a notable exception to that generality, in terms of both its comparative longevity and the complexity of the issues involved.

For present purposes, there is no need to rehearse the checkered history of this litigation. Suffice it to say that with the contracting employer LAMA Interiors, Inc. ("LAMA") having filed bankruptcy proceedings, the plaintiff trust funds (collectively "Funds") seek to impose personal liability on Abel Angulo

46

("Angulo") and Maria Rodriguez ("Rodriguez")[1] for having denuded LAMA of the wherewithal needed to honor its own direct liability for some hundreds of thousands of dollars in unpaid contributions. Angulo has moved to strike or dismiss the claims against him, and Funds have filed a responsive memorandum and the motion is ready for resolution.

Angulo first argues that he escapes liability because LAMA's unpaid contributions are not "plan assets." This opinion will speak to that issue first and will then turn to the relevance of that answer to Angulo's putative liability. By way of beginning, Funds' memorandum has responded by citing authorities as to the limited extent to which courts are inclined to strike pleadings in part or in their entirety. That of course is scarcely relevant, because Angulo alternatively prays for dismissal under Fed. R. Civ. P. ("Rule") 12(b)(6), and that alternative prayer calls for the evaluation of the substantive viability of Funds' claim against Angulo -- a task to which this opinion bends its attention.

Angulo correctly points to two Court of Appeals opinions (most recently Cline v. Industrial Maintenance Eng'g & Contracting Co., 200 F.3d 1223 (9th Cir. 2000) that have held (as Cline, id. at 1234 puts the matter succinctly):

---

[1] Rodriguez has also filed in bankruptcy, and one of the earlier actions by this Court withdrew Funds' claim against Rodriguez so as to restore it as one of Funds' claims in this case.

2

> Until the employer pays the employer contributions over to the plan, the contributions do not become plan assets over which fiduciaries of the plan have a fiduciary obligation; this is true even where the employer is also a fiduciary of the plan.

Funds in turn counter by citing some District Court case law (including a 1999 decision from the Central District of California, which cannot of course stand in the face of the later Ninth Circuit decision in <u>Cline</u>). More persuasive is the straightforward opinion by Chief Judge Ralph Winter in <u>United States v. LaBarbara</u>, 129 F.3d 81, 88 (2d Cir. 1997), which rejected a like argument in upholding the criminal liability of a union officer for aiding and abetting an employer's violation of 18 U.S.C. § 664:[2]

> [Defendant's] argument seems to be that moneys owed to ERISA benefit plans are not assets of such plans until banked. We disagree. Once wages were paid to Local 66 members, Strathmore [the employer] had contractual obligations to the Funds that constituted "assets" of the Funds by any common definition. Certainly, an audit of the Funds would have to include such fixed obligations as assets.

In this instance that common sense meaning of plan "assets" as including the contribution receivables of a plan is buttressed by the sweeping definitions, in the plan documents at issue in this case, of "Trust Fund," "Trust Estate" or "Fund" as encompassing "all assets of any and every kind and nature, consisting of property of the trustees in their trust capacity and subject to

---

[2]That statute makes it a crime for any person to embezzle or convert to the person's own use any "assets of any employee welfare benefit plan or employee pension benefit plan."

3

administration by them hereunder, including <u>all employer contributions</u> made or <u>due to the trustees</u>" (emphasis added).

But that more realistic approach to the concept of an "asset" does not alone do the job for Funds, because that is only the point of beginning for their argument. They then seek to springboard from such inclusion of unpaid contributions as plan "assets" to the position that someone such as Angulo, by diverting the funds that should be used to honor the contributions obligation, therefore becomes a plan fiduciary under 29 U.S.C. § 1002(21)(a):

> [A] person is a fiduciary with respect to a plan to the extent . . . he . . . exercises any authority or control respecting management or disposition of its assets . . . .

But such a reading is too big a stretch, for it would convert every contributing employer into a plan fiduciary. This Court cannot credit the notion that every delinquent employer's nonpayment of a contribution equates to its exercising its control over the "disposition" of a plan's assets, so as to impose fiduciary liability by reason of the nonpayment.

Accordingly, this Court holds that Funds cannot premise Angulo's liability on an asserted breach of fiduciary obligations running to Funds. That by no means lets Angulo out of this lawsuit, for there are ample other grounds for mulcting him in damages for his diversion (assumed for present purposes) of LAMA's assets out of the proper channels of honoring its obligations to Funds (see, e.g., <u>Trustees of Nat'l Elevator Indus. Pension,</u>

4

Health, Benefit & Educ. Funds v. Lutyk, 140 F. Supp. 2d 447 (E.D. Pa. 2001)).

As for Angulo's current motion that attacks the First Amended Complaint ("FAC") itself, this Court will strike only its Paragraphs 31 through 35, which contain the allegations asserting plan fiduciary obligations on the part of Angulo and Rodriguez. FAC ¶¶ 25-30 remain relevant to the potential liability of those individual defendants, and they will be retained.

Angulo also targets FAC ¶¶ 36-40, which seek to invoke another ERISA provision, 29 U.S.C. § 1140:

> It shall be unlawful for any person to . . . discriminate against a participant or beneficiary for . . . the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . ..

As Funds would have it, crooked activity by Angulo and Rodriguez in such matters as "willful underreporting and directives to stewards to purposefully withhold employees and hours work from steward time records" amounted to activity in violation of that section.

Angulo points to Lindemann v. Mobil Oil Corp., 141 F.3d 290 (7th Cir. 1998) as purportedly scotching any such claim. Not so. To be sure, Lindemann, id. at 295 reconfirmed that any violation of the quoted statute requires a showing of specific intent to infringe on employees' rights. But the difficulty with cutting Funds off at the pass is that it remains to be seen as a matter of proof whether Funds can demonstrate that such an intention was at

5

work, rather than sheer greed alone. FAC ¶ 36 alleges the requisite intent, and that is enough for survival at the Rule 12(b)(6) stage. Hence Angulo's motion on that score is denied, and he is ordered to answer the FAC on or before August 10, 2001.

_____
Milton I. Shadur
Senior United States District Judge

Date: July 30, 2001